MORGAN & MORGAN
Jordan M. Solarz, Esquire
Attorney Identification No. 323096
Joshua H.K. Levy, Esquire
Attorney Identification No. 328511
2005 Market Street, Suite 350
Philadelphia, PA 19103
Tel. No. (215) 490-9398
Email: Jordan.solarz@forthepeople.com

Filed and Attested by the Office of Judicial Records 19 SEP 2025 02:51 pm GILLIAM

2066834
3 of 40

Attorney for Plaintiff, Lisa Williams as
Attorney-in-Fact of Warren Jenkins

| | |
|---|---|
| **LISA WILLIAMS AS ATTORNEY-IN-FACT FOR WARREN JENKINS**<br>1345 Colwyn Street<br>Philadelphia, PA 19140<br><br>　　　　　　　　　Plaintiff,<br>　　vs.<br><br>**CH OPERATING, LLC D/B/A CHESTNUT HILL LODGE HEALTH AND REHABILITATION CENTER**<br>8833 Stenton Avenue<br>Wyndmoor, PA 19038<br><br>**CH OPERATING HOLDINGS, LLC**<br>C/o VCorp Services, LLC<br>600 North 2nd Street, Suite 400<br>Harrisburg, PA 17101<br><br>**PREMIER HEALTHCARE MANAGEMENT, LLC**<br>199 Community Drive<br>Great Neck, NY 11021<br><br>**CRESTVIEW 360 HOLDINGS, LLC**<br>5011 S. State Road 7, Suite 106<br>Davie, FL 33314<br><br>**CRESTVIEW 720 TRUST**<br>5011 S. State Road 7, Suite 106<br>Davie, FL 33314<br><br>**WYNDMOR PA REALTY, LLC**<br>2924 Parkside Lane<br>Harrisburg, PA 17110 | COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY<br><br><br>NO.:<br><br>PLAINTIFF DEMANDS A JURY TRIAL |

1



Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

Case ID: 250902124

**JONATHAN BLEIER**
199 Community Drive
Great Neck, NY 11021

**VINCENT RUPERT, NHA**
8833 Stenton Avenue
Wyndmoor, PA 19038

            Defendants.

         :
         :
         :
         :
         :
         :
         :
         :
         :
         :
         :

## NOTICE TO DEFEND
## NOTIFICACIÓN PARA DEFENDERSE

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en el tribunal. Si usted quiere defenderse de las demandas expuestas en las páginas siguientes, usted debe tomar acción en el plazo de veinte (20) días a partir de la fecha en que se le hizo entrega de la demanda y la notificación, al interponer una comparecencia escrita, en persona o por un abogado y registrando por escrito en el tribunal sus defensas o sus objeciones a las demandas en contra de su persona. Se le advierte que si usted no lo hace, el caso puede proceder sin usted y podría dictarse un fallo por el juez en contra suya sin notificación adicional y podría ser por cualquier dinero reclamado en la demanda o por cualquier otro reclamo o desagravio en la demanda solicitado por el demandante. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*<br><br>**Philadelphia County Bar Association**<br>**Lawyers Referral & Information Services**<br>**1101 Market St #11, Philadelphia, PA**<br>**19107**<br>**(215) 238-6300** | *Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*<br><br>**Asoclacion De Licenclados**<br>**De Philadelphia County**<br>**1101 Market St #11, Philadelphia, PA**<br>**19107**<br>**(215) 238-6300** |

2

MORGAN & MORGAN
Jordan M. Solarz, Esquire
Attorney Identification No. 323096
Joshua H.K. Levy, Esquire
Attorney Identification No. 328511
2005 Market Street, Suite 350
Philadelphia, PA 19103
Tel. No. (215) 490-9398
Email: Jordan.solarz@forthepeople.com

2066834(
5 of 40

Attorney for Plaintiff, Lisa Williams as
Attorney-in-Fact of Warren Jenkins

| | | |
|---|---|---|
| **LISA WILLIAMS AS ATTORNEY-IN-FACT FOR WARREN JENKINS**<br>1345 Colwyn Street<br>Philadelphia, PA 19140 | : | COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY |
| | : | |
| | : | |
| Plaintiff, | : | NO.: |
| vs. | : | |
| | : | PLAINTIFF DEMANDS A JURY<br>TRIAL |
| **CH OPERATING, LLC D/B/A**<br>**CHESTNUT HILL LODGE HEALTH**<br>**AND REHABILITATION CENTER**<br>8833 Stenton Avenue<br>Wyndmoor, PA 19038 | : | |
| | : | |
| **CH OPERATING HOLDINGS, LLC**<br>C/o VCorp Services, LLC<br>600 North 2nd Street, Suite 400<br>Harrisburg, PA 17101 | : | |
| | : | |
| **PREMIER HEALTHCARE**<br>**MANAGEMENT, LLC**<br>199 Community Drive<br>Great Neck, NY 11021 | : | |
| | : | |
| **CRESTVIEW 360 HOLDINGS, LLC**<br>5011 S. State Road 7, Suite 106<br>Davie, FL 33314 | : | |
| | : | |
| **CRESTVIEW 720 TRUST**<br>5011 S. State Road 7, Suite 106<br>Davie, FL 33314 | : | |
| | : | |
| **WYNDMOR PA REALTY, LLC**<br>2924 Parkside Lane<br>Harrisburg, PA 17110 | : | |
| | : | |

3



CaseID: 250902124

Certified#: 92148902750910150842887    DFID20675063    Matter-15563467

2066834(
6 of 40

**JONATHAN BLEIER**
199 Community Drive
Great Neck, NY 11021

**VINCENT RUPERT, NHA**
8833 Stenton Avenue
Wyndmoor, PA 19038

                   Defendants.

:
:
:
:
:
:
:
:
:
:

---

## COMPLAINT IN CIVIL ACTION

(The Complaint Includes a Medical Professional Liability Action)

Plaintiff, Lisa Williams as Attorney-in-Fact of Warren Jenkins, by and through counsel, Jordan M. Solarz, Esquire and the law firm of Morgan & Morgan, files the instant Complaint in Civil Action, and in support thereof avers the following:

### I.    PARTIES

#### A.    Plaintiff

1. Warren Jenkins was an adult individual and was a resident of CH Operating, LLC d/b/a Chestnut Hill Lodge Health and Rehabilitation Center ("Facility"), from January 9, 2024, through March 19, 2024.

2. Plaintiff, Lisa Williams is an adult individual residing at 1345 Colwyn Street, Philadelphia, PA 19140.

3. Plaintiff, Lisa Williams is the niece and Attorney-in-Fact for Warren Jenkins.

#### B.    Defendants, CH Operating, LLC d/b/a Chestnut Hill Lodge Health and Rehabilitation Center; CH Operating Holdings, LLC; Premier Healthcare Management, LLC; Crestview 360 Holdings, LLC; Crestview 720 Trust; Wyndmor PA Realty, LLC; Jonathan Bleier; and Vincent Rupert, NHA ("Defendants")

4. Defendant, CH Operating, LLC d/b/a Chestnut Hill Lodge Health and Rehabilitation Center, is a domestic corporation, duly licensed, organized and existing under and

4

by virtue of the laws of the Commonwealth of Pennsylvania, with offices and a place of business located at 8833 Stenton Avenue, Wyndmoor, PA 19038.

2066834(
7 of 40

5.    Defendant, CH Operating Holdings, LLC, is a domestic corporation, duly licensed, organized, and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with a registered agent identified as VCorp Services, LLC located at 600 North 2nd Street, Suite 400, Harrisburg, PA 17101.

6.    Defendant, Premier Healthcare Management, LLC, is a foreign corporation, duly licensed organized and existing under and by virtue of New York, with offices and a place of business located at 199 Community Drive, Great Neck, NY 11021.

7.    Defendant, Crestview 360 Holdings, LLC, is a foreign corporation, duly licensed organized and existing under and by virtue of the laws of Florida, with offices and a place of business located at 58 Larch Hill Road, Lawrence, NY 11559.

8.    Defendant, Crestview 720 Trust, is a business entity that the owners and controllers of the Facility, including Jonathan Bleier and Premier Healthcare Management, LLC utilized to own, operate, manage, and control the Facility and has a registered agent located at 5011 S. State Road 7, Suite 106, Davie, FL 33314.

9.    Defendant, Wyndmor PA Realty, LLC, is a domestic corporation, duly licensed, organized, and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, with offices and a place of business located at 2924 Parkside Lane, Harrisburg, PA 17110.

10.    Defendant, Jonathan Bleier is an individual, who was at all times material hereto, a director, officer, and owner of the Facility and related Defendant entities identified herein. Jonathan Bleier has an address and place of business located at 199 Community Drive, Great Neck, NY 11021.

Certified#: 9214890275091015084287    DFID20675063    Case ID: 250902124    Matter-15563467

20668346
8 of 40

11. Defendant, Vincent Rupert, NHA is an individual, who was at all times material hereto, a manager and the Administrator of the Facility and has an address and place of business located at 8833 Stenton Avenue, Wyndmoor, PA 19038.

12. Each of the aforementioned Defendants engaged in the business of owning, operating and/or managing nursing homes, including CH Operating, LLC d/b/a Chestnut Hill Lodge Health and Rehabilitation Center, providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care to the public in Philadelphia County, Pennsylvania; and was at all times material hereto, duly licensed to operate same in the Commonwealth of Pennsylvania; and was the employer, supervisor and/or partner of all other Defendants noted herein, holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Facility, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable, among other things within the Complaint, for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners and all other Defendants, all of whom played a role in the care provided to Warren Jenkins and in the operation of the Facility.

13. At all times material hereto, Defendants individually and collectively owed duties indicated within this Complaint, some of which were non-delegable, to the residents of the Facility, including Warren Jenkins, such duties being conferred by statue, existing at common law, and/or being voluntarily assumed by each Defendant.

14. At all times material hereto, Defendants individually and collectively, and/or through a joint venture, owned, operated, managed, and controlled the Facility, mutually enjoying the profits from the Facility, and are individually and collectively engaged in the business of

Case ID: 250902124
Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care services to the general public.

2066834(
9 of 40

## II.   **JURISDICTION AND VENUE**

15.     Jurisdiction and venue are proper in this Honorable Court in Philadelphia County, Pennsylvania, insofar as Defendants regularly conduct business in this county, the cause of action arose in this county and/or the action is being brought in any county which venue may be laid against any defendant. See Pa.R.C.P. 1006 and 2179.

16.     Pa.R.C.P. 2179 no longer requires that medical malpractice claims be brought only in a county in which the cause of action arose.

17.     Medical and professional malpractice defendants are now subject to the same venue rules as all other non-governmental defendants.

18.     Under Pa. R.C.P. 2179(a), regarding venue for corporations, venue is proper in any county in which an entity regularly conducts business.

19.     In an effort to avoid liabilities and as a risk management strategy, the Defendants collectively orchestrated themselves into a confusing, multi-tiered organizational labyrinth whereby the operation and management of the Facility was split amongst many different entities and individuals, including CH Operating, LLC d/b/a Chestnut Hill Lodge Health and Rehabilitation Center; CH Operating Holdings, LLC; Premier Healthcare Management, LLC; Crestview 360 Holdings, LLC; Crestview 720 Trust; Wyndmor PA Realty, LLC; Jonathan Bleier.

20.     Defendant, Jonathan Bleier is an individual, who was at all times material hereto, a director, officer, and owner of the Facility and related Defendant entities identified herein.

21.     Defendant, Jonathan Bleier is also the CEO of named Defendant, Premier Healthcare Management, LLC.

7

2066834(
10 of 40

22.    Defendant Premier Healthcare Management, LLC provides management services and consulting services to the Defendant Facility in exchange for financial consideration.

23.    Notably, Defendant Premier Healthcare Management, LLC also provides management services and consulting services in exchange for financial consideration, i.e. conducting business to the following Philadelphia skilled nursing facilities:

a) WT Operating, LLC d/b/a Willow Terrace located at One Penn Boulevard, Philadelphia, PA 19144;

b) Deer Meadows Operating, LLC d/b/a Deer Meadows Rehabilitation Center located at 8301 Roosevelt Boulevard, Philadelphia, PA 19152.

24.    The CEO of Defendant Premier Healthcare Management, LLC, Defendant Jonathan Bleier, also has ownership interest in these Philadelphia skilled nursing facilities.

25.    These Philadelphia skilled nursing facilities, managed by Defendant Premier Healthcare Management, LLC, operate on a continuous 24-hour per day basis.

26.    Defendant Premier Healthcare Management, LLC's management and consulting services are provided to these Philadelphia skilled nursing facilities in a regular, ongoing, and consistent manner.

27.    As Defendant Premier Healthcare Management, LLC is in the business of operating and managing skilled nursing facilities, the provision of management and consulting services to these Philadelphia skilled nursing facilities is central to and directly furthers its corporate objective.

28.    The 2024 Medicare Cost Report for Deer Meadows Operating, LLC d/b/a Deer Meadows Rehabilitation Center located in Philadelphia, PA shows common ownership and control held Defendants, Jonathan Bleier and Premier Healthcare Management, LLC:

8

Certified#: 92148902750910150842871    DFID20675063    Matter-15563467

2066834(
11 of 40

| Health Financial Systems | | DEER MEADOWS REHABILITATION CENTER | | In Lieu of Form CMS-2540-10 | |
|---|---|---|---|---|---|
| STATEMENT OF COSTS OF SERVICES FROM RELATED ORGANIZATIONS AND HOME OFFICE COSTS | | | Provider No.: 395425 | Period: From 07/01/2023 To 06/30/2024 | Worksheet A-8-1 Parts I-II Date/Time Prepared: 10/23/2024 4:10 PM |

| | Symbol (1) | Name | Percentage of Ownership | |
|---|---|---|---|---|
| | 1.00 | 2.00 | 3.00 | |

**PART II. INTERRELATIONSHIP TO RELATED ORGANIZATION(S) AND/OR HOME OFFICE:**

The Secretary, by virtue of the authority granted under section 1814(b)(1) of the Social Security Act, requires that you furnish the information requested under Part B of this worksheet.

This information is used by the Centers for Medicare and Medicaid Services and its intermediaries/contractors in determining that the costs applicable to services, facilities, and supplies furnished by organizations related to you by common ownership or control represent reasonable costs as determined under section 1861 of the Social Security Act. If you do not provide all or any part of the request information, the cost report is considered incomplete and not acceptable for purposes of claiming reimbursement under title XVIII.

| | | | Symbol | Name | | Percentage | |
|---|---|---|---|---|---|---|---|
| 1.00 | | | A | JOHNATHAN BLEIER | | 0.00 | 1.00 |
| 2.00 | | | | | | 0.00 | 2.00 |
| 3.00 | | | | | | 0.00 | 3.00 |
| 4.00 | | | | | | 0.00 | 4.00 |
| 5.00 | | | | | | 0.00 | 5.00 |
| 6.00 | | | | | | 0.00 | 6.00 |
| 7.00 | | | | | | 0.00 | 7.00 |
| 8.00 | | | | | | 0.00 | 8.00 |
| 9.00 | | | | | | 0.00 | 9.00 |
| 10.00 | | | | | | 0.00 | 10.00 |
| 100.00 | G. Other (financial or non-financial) specify: | | | | | 0.00 | 100.00 |

(1) Use the following symbols to indicate interrelationship to related organizations:

A. Individual has financial interest (stockholder, partner, etc.) in both related organization and in provider.
B. Corporation, partnership, or other organization has financial interest in provider.
C. Provider has financial interest in corporation, partnership, or other organization.
D. Director, officer, administrator, or key person of provider or relative of such person has financial interest in related organization.
E. Individual is director, officer, administrator, or key person of provider and related organization.
F. Director, officer, administrator, or key person of related organization or relative of such person has financial interest in provider.

| | Related Organization(s) and/or Home Office | | |
|---|---|---|---|
| | Name | Percentage of Ownership | Type of Business |
| | 4.00 | 5.00 | 6.00 |

**PART II. INTERRELATIONSHIP TO RELATED ORGANIZATION(S) AND/OR HOME OFFICE:**

The Secretary, by virtue of the authority granted under section 1814(b)(1) of the Social Security Act, requires that you furnish the information requested under Part B of this worksheet.

This information is used by the Centers for Medicare and Medicaid Services and its intermediaries/contractors in determining that the costs applicable to services, facilities, and supplies furnished by organizations related to you by common ownership or control represent reasonable costs as determined under section 1861 of the Social Security Act. If you do not provide all or any part of the request information, the cost report is considered incomplete and not acceptable for purposes of claiming reimbursement under title XVIII.

| | | | Name | Percentage | Type of Business | | |
|---|---|---|---|---|---|---|---|
| 1.00 | | | PREMIER HEALTHCARE | 0.00 | MANAGEMENT | | 1.00 |
| 2.00 | | | | 0.00 | | | 2.00 |
| 3.00 | | | | 0.00 | | | 3.00 |
| 4.00 | | | | 0.00 | | | 4.00 |
| 5.00 | | | | 0.00 | | | 5.00 |
| 6.00 | | | | 0.00 | | | 6.00 |

29.     An interrelated party and/or home office, as included on a Medicare Cost Report, is not an incidental designation, but rather one that indicates that the named entity is affiliated with or has control over the Facility, its services, or its supplies, "to a significant extent[.]" 42 CFR § 413.17.

30.     Further, Premier Healthcare, LLC is also listed on Defendant, Chestnut Hill Lodge's Medicaid Cost Report for 2024.

31.     As such, Defendants Jonathan Bleier and Premier Healthcare Management, LLC regularly conduct business in Philadelphia County and venue is proper therein.

9

## III.    FACTUAL BACKGROUND

### A.    Conduct of the Defendants

2066834(
12 of 40

32.    Warren Jenkins was a resident of the Facility from January 9, 2024, through March 19, 2024.[1]

33.    Warren Jenkins required reliable assistance and skilled care in order to complete his activities of daily living and rehabilitation, which necessitated his admission to Defendants' Facility.

34.    In exchange for financial consideration, and pursuant to the admission contract, Warren Jenkins was admitted to the Facility in order to obtain and be provided with that assistance.

35.    The Defendants, through advertising and marketing of the Facility to local hospitals and other providers, held themselves out as capable of providing the level of care required by sick, elderly, and frail individuals like Warren Jenkins, through a number of services including medical, skilled nursing, occupational therapy, physical therapy, speech therapy, and daily custodial care, including hygiene.

36.    When Defendants agreed to admit Warren Jenkins, they assumed the obligation of providing for his total healthcare, including the provision of nutrition, hydration, activities of daily living, medical, skilled nursing, occupational therapy, speech therapy, physical therapy, and daily custodial care.

37.    Defendants exercised complete and total control over the healthcare of all the residents of the Facility, including Warren Jenkins.

---

[1] Plaintiff is not bringing any claim pursuant to Pa. St. 62 P.S. § 1407(c), and nothing in this Complaint should be interpreted as an attempt to recover damages pursuant to that statute.

10

Certified#: 9214890275091015084287    DFID20675063    Matter-15563467
CaseID. 25092124

20668346
13 of 40

38.    At all times material hereto, Defendants were vertically integrated organizations that were controlled by their respective members and/or boards of directors, who were responsible for the operation, planning, budgeting, management, and quality control of the Facility.

39.    The control exercised over the Facility by the Defendants included, inter alia: cash management; cost control; setting staffing levels; budgeting; marketing; maintaining and increasing census; supervision of the Facility Administrator and Director of Nursing; supervision and oversight of the staff; credentialing of physicians who saw patients in the Facility; development and implementation of nursing staff in-services; development and implementation of all pertinent policies and procedures; monitoring customer satisfaction via surveys; performing mock surveys through use of regional and local employees; risk management; corporate and regulatory compliance; quality of care assessment; licensure and certification; controlling accounts payable and receivable; setting guidelines in place that controlled whether or not residents were discharged based on certain clinical condition criteria; development and implementation of reimbursement strategies; retaining contract management, physician therapy and dietary services; dictating census and payor source quotas for admission to the Facility; and employing Facility-level, regional, and corporate staff who together operated the Facility.

40.    Defendants monitored the care being provided at their nursing homes, including the Facility, by and through their respective members, managers, regional personnel, board of directors and corporate officers, who did so by utilizing Department of Health Survey Results, Customer Satisfaction Surveys, Mock Surveys, internal quality indicator reports, CMS Quality Indicator Reports, and CASPER Reports.

11

Case ID: 251002124
Certified#: 921489027509101 5084287     DFID20675063     Matter-15563467

20668346
14 of 40

41.    Defendants exercised ultimate authority over all budgets and had final approval over the allocation of resources for staffing, supplies, capital expenditures, and operations of their nursing homes, including the Facility.

42.    Defendants had the duty and responsibility to establish policies and procedures that addressed the clinical and daily needs of the residents of the Facility, including Warren Jenkins Defendants had the duty and responsibility to ensure that those policies and procedures were implemented.

43.    Defendants had the duty and responsibility to ensure those policies and procedures addressed the needs of the residents of the Facility, which included Warren Jenkins. This includes policies and procedures addressing the recognition and/or treatment of Warren Jenkins' medical conditions, so as to ensure that timely and appropriate care was provided for these conditions whether at the Facility or obtained from other medical providers.

44.    Defendants, acting through their Administrators, members, managers, board of directors and corporate offices, had the duty and responsibility to oversee the standard of professional practice by the members of their staff at the Facility, including regarding the conduct at issue herein.

45.    Defendants had a duty to employ competent, qualified and trained staff so as to ensure that proper care, treatment and services were provided to all residents of the Facility, including Warren Jenkins.

46.    Defendants had a duty and responsibility to ensure that the Facility and its residents, including Warren Jenkins, were provided with sufficient staff and resources to guarantee the timely recognition and appropriate treatment of their medical, nursing and/or custodial needs whether within the Facility or from other medical care providers.

Certified#: 9214890275091015084287    DFID20675063    Case ID: 250902124    Matter-15563467

47.    Knowing that staffing costs were the largest part of their nursing homes' budgets, Defendants chose to operate and/or manage the Facility to maximize their profits at expense of the care provided to their residents, including Warren Jenkins, by negligently, intentionally and/or recklessly mismanaging and/or reducing staffing levels at the Facility below the levels needed to sufficiently meet the needs of the residents, including Warren Jenkins.

48.    Despite their knowledge of the likelihood of harm due to these insufficient staffing levels, and despite Complaints of insufficient staffing from staff members, residents and their families, Defendants recklessly and/or negligently disregarded the consequences of their actions, and/or negligently caused staffing levels at the Facility to be set at a level that did not allow staff to sufficiently meet the needs of the residents, including Warren Jenkins.

49.    Defendants knew that residents with greater health problems and higher acuity are a source of higher reimbursement rates, from governmental programs including Medicare, because of their complex medical needs. Upon present information and belief, such reimbursements from governmental programs, including Medicaid and Medicare, are Defendants primary source of income.

50.    Possessing this knowledge, Defendants intentionally increased the numbers of residents at the Facility with higher acuity and complex medical needs.

51.    Defendants knew, or should have known, that this increase in the acuity and care needs for the residents would significantly increase the need for additional staff, services, resources and supplies necessary to provide these residents with adequate care and meet their needs, including Warren Jenkins.

52.    Despite the knowledge of the increased needs for additional staff because of the increased acuity levels of the Facility residents, including Warren Jenkins, Defendants knowingly

13

Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

disregarded those acuity levels and knowingly established staffing levels that created recklessly high resident to nurse ratios and recklessly high resident to certified nurse aides ratios.

2066834(
16 of 40

53.    Defendants knowingly disregarded the increased resident acuity levels and the increased time required by the staff to provide activities of daily living, medications, and treatments.

54.    The acts and omissions of the Defendants were motivated by a desire to decrease the costs and increase the profits of their nursing homes, including the Facility.

55.    Defendants accomplished these goals by knowingly and recklessly reducing the expenditures for needed staffing, training, care and supplies, at the expense of the healthcare of the residents and despite the knowledge that this cost-cutting would inevitably lead to severe injuries, such as those suffered by Warren Jenkins.

56.    The aforementioned acts and omissions directly caused injury to Warren Jenkins and were known to the Defendants.

57.    Defendants knowingly sacrificed the quality of care received by all residents, including Warren Jenkins, by failing to manage, care, monitor, document, chart, prevent, diagnose and/or treat the injuries and illnesses suffered by Warren Jenkins, as described herein, which included falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

58.    At the time and place of the incidents hereinafter described, the Facility whereupon the incidents occurred was individually, collectively, and/or through joint venture, owned, possessed, controlled, managed, operated and maintained under the exclusive control of the Defendants.

14

59.    At all times material hereto, the Defendants were operating personally or through their agent, servants, workers, employees, contractors, subcontractors, staff, and/or principals, who acted with actual, apparent and/or ostensible authority, and all of whom were acting within the course and scope of their employment and under the direct and exclusive control of the Defendants.

60.    The aforementioned incidents were caused solely and exclusively by reason of the negligence, carelessness, and recklessness of the Defendants, their agents, servants, contractors, subcontractors, staff, and/or employees and were due in no part to any act or failure to act on the part of Warren Jenkins.

61.    Defendants, their agents, servants, contractors, subcontractors, staff, and/or employees are/were, at all times material hereto, licensed professionals/professional corporation and/or businesses and the Plaintiff is asserting professional liability claims against them.

62.    In addition to all other claims and demands for damages set forth herein, Plaintiff is asserting claims for ordinary negligence, custodial neglect, joint venture, and corporate negligence against the Defendants herein, as each of the entities named as Defendants herein are directly and vicariously liable for their independent acts of negligence, for their acts of general negligence, and for their acts of corporate negligence, as plead throughout this Complaint.

**B.    Injuries of Warren Jenkins at the Facility**

63.    Upon admission to the Facility and during the relevant time period, Warren Jenkins was dependent upon the staff for his physical, mental, psycho-social, medical nursing and custodial needs, requiring total assistance with activities of daily living, and he had various illnesses and conditions that required evaluation and treatment.

Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

CaseID. 251002124

20668340
18 of 40

64.    Defendants knew or should have known that Warren Jenkins was at risk for falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

65.    Defendants continuously engaged in a pattern of care replete with harmful and injurious commissions, omissions, and neglect as described herein.

66.    Defendants, through their acts and omissions, deprived Warren Jenkins of adequate care, treatment, food, water, and medicine and caused him to suffer numerous illnesses and injuries, which included falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

67.    As a result of the severity of the negligence Defendants inflicted upon Warren Jenkins, the deterioration of his health and physical condition was negligently accelerated and resulted in both physical and emotional injuries, a loss of dignity, degradation, emotional trauma, severe pain, suffering and mental anguish, and unnecessary hospitalizations.

68.    On December 25, 2023, Warren Jenkins was admitted to Temple Hospital following exacerbation of COPD and a fall at home.

69.    On January 9, 2024, Warren Jenkins was admitted to CH Operating, LLC d/b/a Chestnut Hill Lodge Health and Rehabilitation Center for nursing and rehabilitation.

70.    Upon admission, Warren Jenkins is identified as being at risk for falls due to impaired mobility, decreased functional strength, decreased balance, and decreased endurance/functional activity tolerance.

71.    On January 11, 2024, Warren Jenkins has a BIMS score of 14 indicating that he was cognitively intact. He is noted as being able to ambulate with rolling walker at baseline and

16

Certified#: 92148902750910l5084287    DFID20675063    Matter-15563467

Case ID: 250902124

20668340
19 of 40

had right eye blindness. The MD noted that he had a fair rehab potential, and the long term goal was for a return to his prior place of living.

72.    On January 12, 2024, Warren Jenkins is noted as out of bed to his wheelchair with assistance x 1 with ADLs, transfers, and toileting needs.

73.    On January 15, 2024, records note that Warren Jenkins used a walker and a wheelchair to mobilize. His mobilization was limited due to a UE impairment. He required supervision/touching assistance and partial to moderate assistance with mobilization activities. He was not on a toileting program. He was frequently incontinent of urine and bowel. No bed or chair alarms were in use.

74.    On February 1, 2024, a progress note includes the following:

a)  Around 1735, CNA yelled for help, this writer rushed to resident room, resident was found sitting in the floor in front of his wheelchair. When asked what happened, resident stated, Resident in B bed close the door, I could not breathe, I was trying to open the door and I fell. Supervisor made aware. No apparent injury noted. Resident was reminded to use the call light when needed, voiced understanding. Resident C/O of right hip pain 5/10, PRN Tylenol given. Spoke with MD Cowen ordered X-RAY to R hip. Lisa Williams made aware. Neuro check initiated.

b)  The MD prescribed Acetaminophen 325 mg x 2 PO Q6H PRN. He had 5/10 right hip pain at 1751 and was given analgesia.

75.    On February 1, 2024, a progress note at 19:23 reads "Addendum to previous noted. MD Cohen J. ordered X-Ray STAT 2-3 views to Right hip with pelvis to R/O FX post unwitnessed fall."

17

2066834(
20 of 40

76.     On February 1, 2024, a progress note at 21:01 reads "Writer alerted to the patient room s/p fall . Resident observed sitting in his chair was unable to wait for my assessment due to anxiety. Resident with no changes in his LOC, c/o pain on the right hip ,No changes in his ROM . Neuro checks initiated per policy . Resident stated he was attempting to close his room door & over reached & tilted forward out of his chair. MD made aware by the charge nurse & new order obtained for an xray . Resident is stable & reminded to utilize his call bell for assist with transfers ,etc. POC ongoing."

77.     On February 1, 2024, a progress note at 23:03 reads "Addentum to previous noted. Post untwitnessed fall, resident noted extremely anxious, he was trying to get up and transferred independently. Resident refused to wait on RN supervisor to do the assessemnt, he wanted to sit back to his W/C immediately, despite encouragement and education still refused and continue to try to stand up on his own. No apparent injury noted. Resident was able to move all extremities. Resident was transferred back to his chair for safety. He c/o of Right Hip pain, PRN pain med given and was effective, Stat X-ray done as per order, awaiting on result. Neuro check iniated. Report given to next shift to continue to monitor."

78.     On February 2, 2024, a progress note at 01:33 reads "X-ray to right hip completed 2/1/2024. Impression: Unremarkable right hip."

79.     On February 2, 2024, Warren Jenkins is noted with 10/10 pain.

80.     On February 3, 2024, Warren Jenkins is noted with 10/10 pain.

81.     On February 3, 2024, a progress note at 07:08 reads "unwitnessed fall with no appear ant injuries. neuro checks on going, c/o right shoulder pain, right hip pain/ Tylenol given/effective. resident refused Bipap, supervisor notified. he remains on 4L SPO2 @98%N/C with no SOB noted. all due meds tolerated. call bell in reach, on going POC."

18

CaseID. 25092124
Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

2066834(
21 of 40

82.    On February 5, 2024, Warren Jenkins is noted with 8/10 pain.

83.    On February 5, 2024, a progress note at 13:18 reads "Resident received this am alert & verbal with c/o pain 9/10 with movement of RLE. Resident stated pain has intensified s/p fall. Limb with edema, decreased ROM & visually appears externally rotated . Rehab MD in house to assess ordered STAT RLE xrays & Lumbar/sacral xrays as well. Preventive Dx tech in house @ 12:30pm,results are pending. Resident family inhouse & made aware as well. Resident given prn tylenol to aid in relieving discomfort. Strict hip precautions maintained until results are in from the xray. Therapy services aware of patient status. Fall/safety interventions in place. Call bell within reach. POC ongoing."

84.    On February 5, 2024, a progress note at 14:15 reads "Xray result impression indicating bony demineralization with acute subcapital fracture of the right hip & mild valgus deformity. Multiple surgical clips overlying the superior pubic rami. Resident RP called & informed that the patient will be transferred to TUH for potential surgical repair. MD called & message left to return the call. 911 transport assist called & arrived @ 2:14pm to transfer to CHH unable to transport to TUH main, family informed."

85.    On February 5, 2024, at 21:13 (after Warren Jenkins had already been sent to the hospital), a physician progress note by Dr. Zev Klapholz reads "Seen at bedside, fell over the weekend, XR showed no fracture. Today RLE is externally rotated with severe TTP to right GT and L/S spine. Ordered XR to L/S Spine and repeat hip XR. XR came back with fracture, sent to the ED for further eval and treatment."

86.    On February 5, 2024, Warren Jenkins was transferred to Temple Hospital Emergency Department. At 14:39, an ED provider note includes that Warren Jenkins presented from the Facility for a fall on Friday and hip pain. Warren Jenkins notes that the x-ray was

Case ID. 25090124
Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

reportedly negative for any fractures but that he experienced worsening pain throughout the weekend and a repeat x-ray was obtained on February 5, 2024 which showed a displaced right femoral neck fracture.  A CT of RLE without contrast at the Hospital showed a femoral neck fracture.

87.    On February 6, 2024, Warren Jenkins underwent a right hip hemiarthroplasty.

88.    On February 10, 2024, Warren Jenkins was discharged back to the Facility.

89.    On March 19, 2024, Warren Jenkins was discharged from the Facility.

90.    Defendants were fully aware of Warren Jenkins' medical history, medical conditions, and co-morbidities and the level of nursing care he would require while a resident at the Facility.

91.    The medical record for Warren Jenkins while he was a resident at Defendants' Facility includes and evidences missing and incomplete documentation.

92.    The Defendants negligently caused severe injury to Warren Jenkins when they: mismanaged the Facility; under-budgeted the Facility; understaffed the Facility; failed to train or supervise the Facility's employees; failed to provide adequate and appropriate healthcare as described herein; engaged in incomplete and inconsistent documentation; failed to develop an appropriate care plan; failed to ensure the highest level of physical, mental and psychosocial well-being; failure to supervise; failed to ensure safety; failed to timely and adequately turn and reposition; failed to immediately assess following injury; failure to prevent injury, which, together, caused Warren Jenkins to suffer falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

93.    As a result of the negligence, carelessness, and recklessness of the Defendants herein described, Warren Jenkins was caused to suffer serious and permanent injuries as described

20

Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

Case ID. 250902124

herein, to, in and about his body and possible aggravation and/or activation of any pre-existing conditions, illnesses, ailments, or diseases he had, and/or the accelerated deterioration of his health, physical and mental condition, and a loss of the ordinary pleasures of life, a loss of dignity, humiliation, and more particularly, falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain, as well as anxiety, reaction and injury to his nerves and nervous system, some or all of which were permanent, together with other medical complications.

2066834(
23 of 40

## COUNT ONE - NEGLIGENCE[2]

**Lisa Williams as Attorney-in-Fact of Warren Jenkins**
**v.**
**Defendants, CH Operating, LLC d/b/a Chestnut Hill Lodge Health and Rehabilitation Center; CH Operating Holdings, LLC; Premier Healthcare Management, LLC; Crestview 360 Holdings, LLC; Crestview 720 Trust; Wyndmor PA Realty, LLC; Jonathan Bleier; and Vincent Rupert, NHA**

94.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

95.    Upon accepting Warren Jenkins as a resident at the Facility, Defendants individually and jointly assumed direct, non-delegable duties to Warren Jenkins to provide him with adequate and appropriate healthcare, as well as basic custodial and hygiene services, as set forth herein.

96.    If Defendants were unable or unwilling to meet the needs of Warren Jenkins, they had an affirmative duty and legal obligation to discharge Warren Jenkins from the Facility.

97.    Defendants owed a non-delegable duty to provide adequate and appropriate medical, skilled nursing, rehabilitation, physical therapy, occupational therapy, speech therapy,

---

[2] This Count contains all negligence-based causes of action, including corporate negligence, professional negligence, and ordinary/custodial negligence.

21

CaseID. 25092124
Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

activities of daily living and other custodial care service and supervision to Warren Jenkins and other residents at the Facility, such as reasonable caregivers would provide under similar circumstances.

98.    Defendants each owed a non-delegable duty to the Facility's residents, including Warren Jenkins, to hire, train, and supervise their employees so as to ensure that the Facility was operated, and services were provided to Defendants' residents in a safe and reasonable manner.

99.    Defendants, by and through their agents, employees, and/or servants each owed a duty of care to Warren Jenkins to exercise the appropriate skill and care of licensed physicians, nurses, certified nurse aides, therapy providers, rehabilitation providers, dietary personnel, Directors of Nursing, and/or Nursing Home Administrator.

100.    Defendants each owed the following duties to Warren Jenkins: the duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; to select, train and retain only competent staff; to oversee and supervise all persons who practiced medicine, nursing, rehabilitation and/or therapy within the Facility; to staff the Facility with personnel at sufficient numbers and training to provide care and services to meet the needs of the residents; a duty to ensure the respect and dignity of the residents; the duty to adequately fund the facility and not to under-budget for staffing and resources; to formulate, implement, update and enforce policies and procedures to ensure that all residents receive quality care as required by the applicable standards of care; a duty to take adequate measures to remedy known problems in the delivery of hygiene and custodial care as well as in the provision of medical, skilled nursing, rehabilitation, occupation therapy, and speech therapy; a duty to notify residents, their families and/or representatives of the fact that Defendants were unable to provide adequate care and services when Defendants knew, or should have known, of their deficiencies in providing such

22

Certified#: 9214890275091015084287    DFID20675063

20668340
25 of 40

care and services; a duty to refuse to admit residents that Defendants knew or should have known they were unable to provide the necessary care and services required by the residents; a duty to not admit more residents than they could safely provide the necessary care and services for that the residents required; a duty to keep the Facility's residents free from abuse and neglect.

101.   Defendants failed to uphold and fulfill the aforementioned duties which proximately caused severe injuries and pain to Warren Jenkins as detailed herein.

102.   In addition to the direct acts and omissions of the corporate Defendants, the Defendants also acted through their agents, servants, and employees, who were in turn acting within their course and scope of their employment under the direct supervision and control of Defendants.

103.   Upon present information and belief, at all times material hereto, Defendants authored, produced, and/or received multiple and frequent reports detailing the number, frequency, factual circumstance and types of injuries and illnesses sustained by Warren Jenkins and the other residents of the Facility.

104.   Despite being made aware of this information, including those specific to Warren Jenkins, Defendants failed to take actions to prevent the occurrence of these types of injuries and illnesses.

105.   Defendants knew, or should have known, of the aforementioned issues that were occurring with the care of Warren Jenkins, as they were placed on actual and/or constructive notice of the same, through their own reports, CMS Quality Indicator Reports, CASPER Reports, and Federal and Pennsylvania Department of Health Surveys.

23

Case ID: 250902124
Certified#: 9214890275091015084287   DFID20675063   Matter-15563467

106.    Defendants, as the corporate members, managers, owners, and/or directors of the Facility, breached their duties and were, therefore, negligent, careless, and reckless in their obligations to Warren Jenkins.

107.    Defendants' corporate conduct was independent of the negligent conduct of the employees of the Facility, and was outrageous, willful, and wanton and exhibited a reckless indifference to the health and well-being of the residents, including Warren Jenkins.

108.    Defendants' breaches of duties, negligence, professional negligence, corporate negligence, carelessness and recklessness, individually, vicariously and/or acting by and through their officers, directors, members, managers, physicians, physicians' assistants, nurses, certified nurse aides, rehabilitation personnel, therapy personnel, dietary personnel, regional and corporate staff, who examined, treated and/or communicated the condition of Warren Jenkins, and through the administrative personnel responsible for hiring, retaining, and/or dismissing staff, staff supervision and policy making and enforcement, as well as any agents servants, employees, contractors, subcontractors, and/or consultants of Defendants where exhibited in the following acts and omissions in the care and treatment of Warren Jenkins.

109.    Defendants failed to hire, utilize, train, and retain sufficient staff to meet the needs of the residents, including Warren Jenkins, which caused Warren Jenkins to suffer falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

110.    Defendants failed to ensure that Warren Jenkins received his physician-ordered medications in accordance with his physician's orders.

111.    Defendants failed to ensure that Warren Jenkins received his physician-ordered treatments in accordance with his physician's orders.

24

Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

2066834(
27 of 40

112.    Defendants failed to timely and appropriately notify Warren Jenkins' physician(s) and consulting specialists when he experienced significant changes in his condition, contributing to Warren Jenkins' injuries and illnesses, including falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

113.    Defendants failed to obtain new or modified physician orders when Warren Jenkins' changes in condition required the same.

114.    Defendants failed to timely and appropriately notify Warren Jenkins' family and personal representatives when he experienced significant changes in his condition, contributing to Warren Jenkins' injuries and illnesses, including falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

115.    Defendants failed to accurately and consistently document Warren Jenkins' needs and the care and services provided to him in response to such needs.

116.    Defendants failed to ensure that Warren Jenkins did not develop serious and permanent injuries to, in and about his body and possible aggravation and/or activation of any pre-existing conditions, illnesses, ailments, or disease he had, and/or accelerated the deterioration of his health, physical and mental condition, and more particularly, falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

117.    Defendants failed to respond in a timely manner with appropriate medical, nursing, and custodial care when Warren Jenkins was injured, including when he experienced falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

118.    Defendants failed to ensure that each resident, including Warren Jenkins, received, and that the Facility provided, the necessary care and services to attain or maintain the highest

25

practicable physical, mental, and psychosocial well-being, in accordance with the comprehensive assessment and plan of care.

20668346
28 of 40

119. Plaintiff believes and avers that Defendants' failures were caused by inadequate staffing levels, which are set by the corporate owners and managers of the Facility, that is, CH Operating Holdings, LLC; Premier Healthcare Management, LLC; Crestview 360 Holdings, LLC; Crestview 720 Trust; Wyndmor PA Realty, LLC; and, Jonathan Bleier.

120. Defendants chose to operate and/or manage the Facility to maximize their profits at expense of the care provided to their residents, including Warren Jenkins, by negligently, intentionally and/or recklessly mismanaging and/or reducing staffing levels at the Facility below the levels needed to sufficiently meet the needs of the residents, including Warren Jenkins.

121. Defendants admit residents with higher acuity and complex medical needs without increasing staffing levels. Due to their higher acuity and complex medical needs, these residents require more hands-on care.

122. Despite this increase in acuity, Defendants would not increase their staffing levels to reflect this need for additional care.

123. As a result of understaffing, the residents of Defendants' Facility, including Warren Jenkins, were not provided with adequate care and treatment to meet their needs, which resulted in Warren Jenkins suffering falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

124. Defendants failed to ensure Warren Jenkins' comprehensive care plans were developed, reviewed, and updated as required by the standard of care, including with significant changes in condition.

26

Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

2066834(
29 of 40

125.   Defendants failed to develop and implement an appropriate, comprehensive, and individualized care plan for Warren Jenkins that included measurable objectives and timetables to meet his medical, nursing, custodial, mental, and psychosocial needs as identified in the comprehensive assessment.

126.   Defendants failed to administer the Facility in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, including Warren Jenkins.

127.   Defendants failed to oversee and supervise all persons who practiced medicine, skilled nursing, rehabilitation, occupation therapy, speech therapy, dietary services and custodial care in the Facility who failed to provide adequate and appropriate healthcare to prevent Warren Jenkins from suffering falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

128.   Defendants failed to formulate, implement, and enforce adequate policies and procedures to prevent Warren Jenkins from suffering from falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

129.   Defendants failed to refer Warren Jenkins to the necessary medical specialists in a timely manner who would have properly diagnosed and/or treated his condition.

130.   Defendants failed to implement a budget that properly funded the Facility and allowed the Facility to provide adequate and appropriate healthcare to its residents, including Warren Jenkins, necessarily including staffing and supplies.

131.   Defendants grossly and recklessly understaffed the facility.

132.   Defendants failed to take necessary and appropriate steps to remedy the continuing problems at the Facility that the Defendants knew, or should have known, were occurring with

Case ID: 250902124
Certified#: 92148902750910 15084287   DFID20675063   Matter-15563467

Warren Jenkins' care, which included the need to increase the number of employees, hiring skilled and/or trained employees, providing adequate training to the employees, monitoring the conduct of the employees, and/or changing policies and procedures to improve resident care.

20668340
30 of 40

133.    Plaintiff believes and avers that Defendants chose to operate and/or manage the Facility to maximize their profits at expense of the care provided to their residents, including Warren Jenkins, by negligently, intentionally, and/or recklessly mismanaging and/or reducing staffing levels at the Facility below the levels needed to sufficiently meet the needs of the residents, including Warren Jenkins.

134.    Due to these insufficient staffing levels, Warren Jenkins suffered injuries, which included falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

135.    There were not sufficient staff members to adequately provide the care and treatment prescribed by the physicians to Warren Jenkins, which caused him to suffer all of the injuries described herein.

136.    There were not sufficient staff members to adequately supervise and assist Warren Jenkins, which caused him to suffer falls with severe injury including fractured hip and severe pain.

137.    There were not sufficient staff members to adequately care plan and implement fall interventions for Warren Jenkins, which caused him to suffer falls with severe injury including fractured hip and severe pain.

138.    There were not sufficient staff members to adequately monitor and address Warren Jenkins' pain, which caused him to suffer needless and preventable pain.

28

Case ID: 250902124
Certified#: 92148902750910150084287    DFID20675063    Matter-15563467

139.    There were not sufficient staff members to provide adequate hydration and nutrition to Warren Jenkins, which caused him to suffer from dehydration and malnutrition.

2066834(
31 of 40

140.    Defendants failed to maintain compliance with the governmental regulations, including 42 C.F.R. § 483.101 *et seq.* and Title 28 Pa.Code § 201.1 *et seq.*, to which Defendants are required to adhere and to which their delivery of care is compared during Federal and Pennsylvania Department of Health Annual and Complaint-based surveys, including 42 C.F.R. §§ 483.5, 483.21(a) & (b), 483.25(b) & (c), 483.10(a) & (e) & (c) & (g), 483.10(c)(2)(iv), 483.10(i), 483.12, 483.15(g)(14), 483.20, 483.20(b)(2)(ii), 483.24, 483.25, 483.25(I), 483.60, 483.30, 483.35, 483.70; 483.70(e); 483.70(i); 483.10(f) & (h); 483.25(e), 483.25(b) & (c), 483.40; 483.45(b) & (c) & (e) & (d); 483.45(f), 483.80, and, 28 Pa.Code §§ 201.29, 211.5(f); 211.10, § 211.11, 201.29(j) & (i), 211.10, 205.1, 211.8; 201.29(c), 51.3, 201.14(c), 211.2, 211.5, 211.6, 211.2(a), 211.10(a), 211.2, 211.12, 211.5, 211.7, 201.18; 201.20, 211.10(d), 22.1.6, 211.10(a).[3]

141.    In committing the acts and omissions herein, Defendants acted in a grossly negligent manner, with reckless indifference to the rights and safety of Warren Jenkins.

142.    Upon information and belief, Defendants' owners, officers, directors, partners, members and managers were made aware of Federal and Pennsylvania Department of Health survey results and placed on notice of the care issues and/or physical/environmental issues of their nursing homes, including the Facility.

143.    Upon information and belief, Defendants, including their owners, officers, directors, partners, members, managers, and employees, knew they had been cited by Federal and Pennsylvania Department of Health surveyors for deficiencies regarding the Facility prior to,

---

[3] Plaintiff is not asserting a claim for negligence *per se.*

29

Case ID: 250902124
Certified#: 92148902750910150842287    DFID20675063    Matter-15563467

during and after the residency of Warren Jenkins, and were placed on notice as to care issues and/or physical/environmental issues at the Facility.

2066834(
32 of 40

144. For example, on August 2, 2023, the Facility was cited by the Department of Health for failure to ensure that the required number of Nurse Aides were on duty for three out of the 14 days reviewed.

145. Further, a February 28, 2024, Survey notes that resident R83, which upon information and belief was Warren Jenkins, as follows:

   a) It was observed on February 25, 2024, at 10:00 a.m. Resident R83 appeared cold as he laid in bed using his coat as a blanket. The resident explained last night his blanket got wet and the aides told him there were none left. The resident said he used his coat as a blanket all night through the morning and was cold.

146. On May 7, 2024, the Facility was once again cited for failure to ensure adequate staffing levels.

147. On October 1, 2024, the Facility was once again cited for failure to ensure adequate staffing levels.

148. As a direct and proximate result of Defendants' acts and/or omissions, and their breach of their duty of care, negligence, carelessness and recklessness, Warren Jenkins suffered (a) severe permanent physical injuries resulting in severe pain, suffering and disfigurement (b) mental anguish, embarrassment, humiliation, degradation, emotional distress, and loss of personal dignity, (c) loss of capacity for enjoyment of life, (d) expense of otherwise unnecessary hospitalizations, medical expenses and residency at the Facility, (e) aggravation of his pre-existing medical conditions.

Case ID: 250902124
Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

149.  In causing the aforementioned injuries, Defendants knew, or should have known, that Warren Jenkins would suffer such harm.

150.  Defendants' conduct was intentional, outrageous, willful, and wanton, and exhibited a reckless indifference to the health and well-being of Warren Jenkins.

151.  Defendants' conduct justifies an award of punitive damages.

**WHEREFORE**, Plaintiff, Lisa Williams as Attorney-in-Fact of Warren Jenkins, respectfully requests that judgment be entered in her favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00); whichever is greater, together with punitive damages, and any other relief that this Honorable Court deems appropriate given the circumstances. A jury trial is demanded.

## COUNT TWO – VICARIOUS LIABILITY

**Lisa Williams as Attorney-in-Fact of Warren Jenkins**
**v.**
**Defendants, CH Operating, LLC d/b/a Chestnut Hill Lodge Health and Rehabilitation Center; CH Operating Holdings, LLC; Premier Healthcare Management, LLC; Crestview 360 Holdings, LLC; Crestview 720 Trust; Wyndmor PA Realty, LLC; Jonathan Bleier; and Vincent Rupert, NHA**

152.  Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

153.  Defendants' actions and omissions occurred through its ostensible agents, agents, servants and employees, all of whom negligently provided care to Warren Jenkins, which resulted in falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

154.  Defendants' ostensible agents, agents, servants and employees, including officers, directors, members, managers, physicians, physicians' assistants, nurses, certified nurse aides,

31

Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

2066834(
34 of 40

regional and corporate staff had the duty to prevent Warren Jenkins from suffering falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

155. Defendants' ostensible agents, agents, servants and employees, including officers, directors, members, managers, physicians, physicians' assistants, nurses, certified nurse aides, regional and corporate staff, had the duty to provide interventions, assessment, care, documentation, and treatment to prevent Warren Jenkins from suffering falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain.

156. The Defendants are vicariously liable for the acts, commissions, and omissions of their ostensible agents, agents, servants and/or employees, who were acting within the course and scope of their employment, as fully as though they had performed the acts or omissions themselves.

157. Defendants knew of the government/state survey results of the Facility and Defendants still did not remedy the medical and nursing deficiencies raised in the surveys, thereby permitting the deficient care to continue.

158. As a direct and proximate result of the Defendants' acts and/or omissions, and its breach of duty of care, Warren Jenkins suffered (a) falls with severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain, (b) severe permanent physical injuries resulting in pain, suffering and disfigurement, (c) mental anguish and humiliation, (d) loss of capacity for enjoyment of life, (e) expense of otherwise unnecessary hospitalization, medical expenses and residency at the Facility, and (f) aggravation of pre-existing medical conditions.

159. In causing the aforementioned injuries, Defendants knew, or should have known, that Warren Jenkins would suffer such harm.

160. As a result of the aforesaid negligent conduct of Defendants, Warren Jenkins was caused to suffer and/or increased his risk of suffering a serious and permanent injury, falls with

32

Certified#: 9214890275091015084287   DFID20675063   Matter-15563467

2066834(
35 of 40

severe injury including fractured hip, as well as poor hygiene, dehydration, malnutrition, and severe pain, as well as a loss of the enjoyment of the pleasures of life, including the decreased ability to engage in his activities of daily living.

161.    The conduct of the Defendants was intentional, outrageous, willful, wanton and exhibited a reckless indifference to the health and well-being of Warren Jenkins.

162.    The conduct of the Defendants was such that an award of punitive damages is justified.

**WHEREFORE**, Plaintiff, Lisa Williams as Attorney-in-Fact of Warren Jenkins, respectfully requests that judgment be entered in her favor, and against Defendants, in an amount in excess of the compulsory arbitration limits and/or Fifty Thousand Dollars ($50,000.00); whichever is greater, together with punitive damages, and any other relief that this Honorable Court deems appropriate given the circumstances. A jury trial is demanded.

Respectfully submitted,<br>
**MORGAN & MORGAN**

DATED:  9/19/2025                          BY:

Jordan M. Solarz, Esquire<br>
*Attorney for Plaintiff*

33



Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

Case ID: 250902124

# CERTIFICATE OF SERVICE

I, Jordan M. Solarz, Esquire, counsel for Plaintiff, do hereby certify that a true and correct

2066834(
36 of 40

copy of the Complaint was served upon the following:

CH OPERATING, LLC D/B/A
CHESTNUT HILL LODGE HEALTH
AND REHAB ILITATION CENTER
8833 Stenton Avenue
Wyndmoor, PA 19038

CH OPERATING HOLDINGS, LLC
C/o VCorp Services, LLC
600 North 2nd Street, Suite 400
Harrisburg, PA 17101

PREMIER HEALTHCARE
MANAGEMENT, LLC
199 Community Drive
Great Neck, NY 11021

CRESTVIEW 360 HOLDINGS, LLC
5011 S. State Road 7, Suite 106
Davie, FL 33314

CRESTVIEW 720 TRUST
5011 S. State Road 7, Suite 106
Davie, FL 33314

WYNDMOR PA REALTY, LLC
2924 Parkside Lane
Harrisburg, PA 17110

JONATHAN BLEIER
199 Community Drive
Great Neck, NY 11021

VINCENT RUPERT, NHA
8833 Stenton Avenue
Wyndmoor, PA 19038

1

Case ID: 250902124
Certified#: 9214890275091015084287    DFID20675063    Matter-15563467

**MORGAN & MORGAN**

20668346
37 of 40

DATED: __9/19/2025__                    BY: _____

Jordan M. Solarz, Esquire
*Attorney for Plaintiff*

2



Certified#: 92148902750910150084287    DFID20675063    Matter-15563467

CaseID: 250902124

## VERIFICATION

The undersigned, having read the attached Complaint, verifies that the within Complaint is based on information furnished to counsel, which information has been gathered by counsel in the course of this lawsuit. The language of the Complaint is that of counsel and not the signer. Signer verifies that signer has read the within Complaint and that it is true and correct to the best of signer's knowledge, information and belief. To the extent that the contents of the Complaint are not that of signer, signer has relied upon counsel in taking this Verification. This Verification is made subject to the penalties relating to unsworn falsification to authorities.

Date: 9/19/2025 | 2:27 PM EDT

By: _____
Plaintiff

MORGAN & MORGAN
Jordan M. Solarz, Esquire
Attorney Identification No. 323096
Joshua H.K. Levy, Esquire
Attorney Identification No. 328511
2005 Market Street, Suite 350
Philadelphia, PA 19103
Tel. No. (215) 490-9398
Email: Jordan.solarz@forthepeople.com

Filed and Attested by the
Office of Judicial Records
19 SEP 2025 03:41 pm
2066834
39 of 40

Attorney for Plaintiff, Lisa Williams as
Attorney-in-Fact of Warren Jenkins

| | |
|---|---|
| **LISA WILLIAMS AS ATTORNEY-IN-FACT FOR WARREN JENKINS**<br>1345 Colwyn Street<br>Philadelphia, PA 19140<br><br>Plaintiff,<br>vs.<br><br>**CH OPERATING, LLC D/B/A CHESTNUT HILL LODGE HEALTH AND REHABILITATION CENTER**<br>8833 Stenton Avenue<br>Wyndmoor, PA 19038<br><br>**CH OPERATING HOLDINGS, LLC**<br>C/o VCorp Services, LLC<br>600 North 2nd Street, Suite 400<br>Harrisburg, PA 17101<br><br>**PREMIER HEALTHCARE MANAGEMENT, LLC**<br>199 Community Drive<br>Great Neck, NY 11021<br><br>**CRESTVIEW 360 HOLDINGS, LLC**<br>5011 S. State Road 7, Suite 106<br>Davie, FL 33314<br><br>**CRESTVIEW 720 TRUST**<br>5011 S. State Road 7, Suite 106<br>Davie, FL 33314<br><br>**WYNDMOR PA REALTY, LLC**<br>2924 Parkside Lane<br>Harrisburg, PA 17110 | COURT OF COMMON PLEAS<br>OF PHILADELPHIA COUNTY<br><br><br>NO.: 250902124<br><br>PLAINTIFF DEMANDS A JURY TRIAL |

Certified#: 92148902750910105084287    DFID20675063    Matter-15563467

**JONATHAN BLEIER**
199 Community Drive
Great Neck, NY 11021

**VINCENT RUPERT, NHA**
8833 Stenton Avenue
Wyndmoor, PA 19038

      Defendants.

:
:
:
:
:
:
:
:
:
:
:

---

## CERTIFICATE OF MERIT AS TO JONATHAN BLEIER AS PER PA RCP 1042.3

I hereby certify that an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices, and that such conduct was a cause in bringing about the harm to Warren Jenkins.

I hereby certify that an appropriate licensed professional has supplied a written statement that the claims that the defendant deviated from acceptable professional standards are based on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and that such conduct was a cause in bringing about the harm to Warren Jenkins.

          Respectfully submitted,
          **MORGAN & MORGAN**

DATED: 9/19/2025        BY:_____
            Jordan M. Solarz, Esquire
            *Attorney for Plaintiff*

Certified#: 92148902750910150842287    DFID20675063    Matter-15563467

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lisa Williams as Attorney-in-Fact for Warren Jenkins

**DEFENDANTS**
CH Operating, LLC d/b/a Chestnut Hill Lodge Health and Rehabilitation Center, et al.

**(b)** County of Residence of First Listed Plaintiff  Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jordan M. Solarz, Esquire; Joshua H.K. Levy, Esquire

Attorneys *(If Known)*
Melissa J. Brown, Esquire; Michelle D. Kaminski, Esquire

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

### TORTS
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [x] 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

### REAL PROPERTY
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

### CIVIL RIGHTS
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

### PRISONER PETITIONS
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty
**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

### LABOR
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

### IMMIGRATION
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

### BANKRUPTCY
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

### INTELLECTUAL PROPERTY RIGHTS
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

### SOCIAL SECURITY
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

### FEDERAL TAX SUITS
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1331
Brief description of cause:
Negligence allegations against nursing facility relating to care/treatment of patient.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE  10/30/2025

SIGNATURE OF ATTORNEY OF RECORD  Melissa J. Brown

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:___Nursing facility located in Pennsylvania_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit? — Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit? — Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit? — Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual? — Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation. — Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☒ 16. All Other Federal Question Cases. *(Please specify)*: 42 CFR 483_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☐  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☒  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.